THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JAMES M.,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | **ORDER**<br>• **ADOPTING [25] REPORT AND RECOMMENDATION**<br>• **OVERRULING [26] PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION**<br>• **DENYING [20] PLAINTIFF'S MOTION FOR REVIEW OF AGENCY ACTION**<br><br>Case No. 2:21-cv-00521-DBB-DBP<br><br>District Judge David Barlow |

Before the court are Plaintiff James M.'s ("Plaintiff") objections to Chief Magistrate Judge Dustin B. Pead's Report and Recommendation that reviewed Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration's (the "SSA") denial of disability insurance benefits.[1] For the reasons below, the court adopts the Report and Recommendation, overrules Plaintiff's objection, and denies Plaintiff's motion for agency review.

## BACKGROUND

On June 23, 2019, Plaintiff filed an application for social security disability insurance benefits under Title II of the Social Security Act (the "Act").[2] He alleged that his eligibility for benefits started on June 5, 2019.[3] The SSA determined that he was not entitled to disability

[1] Pl. Objs. to the Mag. J. R. & R. ("Objs. to Mag. J."), ECF No. 26, filed Nov. 29, 2022.
[2] Compl. ¶ 5, ECF No. 1, filed Sept. 1, 2021.
[3] *Id.*

benefits on November 8, 2019.[4] It affirmed the denial upon reconsideration on January 27, 2020.[5] Plaintiff requested and obtained a hearing before Administrative Law Judge Jason W. Crowell (the "ALJ") on January 12, 2021.[6]

Applying the SSA's five-step sequential evaluation process,[7] the ALJ concluded that Plaintiff was not disabled under the Act.[8] At step two, the ALJ found three severe impairments: obesity, sleep apnea, and Parkinson's disease.[9] Under step four, he determined that Plaintiff had the residual functional capacity ("RFC") to "perform light work[;] . . . frequently climb ramps and stairs, balance, kneel, and crawl; [and] frequently handle and finger bilaterally."[10] As for limitations, the ALJ found that Plaintiff could "never climb ladders, ropes, or scaffolds" and had to "avoid concentrated exposure to hazards."[11] Subsequently, the ALJ found that Plaintiff's RFC, work experience, age, and education allowed him to work as an airline security representative, a job at which Plaintiff previously had worked.[12]

On July 27, 2021, the SSA Appeals Council denied Plaintiff's request for review.[13] Thus, the ALJ's decision became the "final decision of the Commissioner of Social Security in his case."[14] Plaintiff filed his Complaint on September 1, 2021.[15] He filed his opening brief on

---

[4] Certified Admin. Rec. ("CAR") 98, ECF No. 11-1, filed Jan. 5, 2022.
[5] *Id.* at 77.
[6] *Id.* at 106, 124.
[7] To determine whether a person is qualified to receive disability benefits, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1505(a), 404.1520, 416.905(a).
[8] CAR 31.
[9] *Id.* at 25.
[10] *Id.* at 28. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567.
[11] CAR 28.
[12] *Id.* at 30–31.
[13] *Id.* at 5.
[14] *Id.*; *see* 20 C.F.R. § 416.1481.
[15] *See* Compl.

September 5, 2022.[16] The SSA responded on September 23, 2022.[17] The magistrate judge issued his Report and Recommendation on November 15, 2022.[18] Finding that the ALJ's decision was supported by substantial evidence and that it was legally sound, the magistrate judge recommended that the court affirm the SSA's decision.[19] Plaintiff filed the instant objection on November 29, 2022.[20] The SSA elected not to file a response.[21]

## STANDARD OF REVIEW

### I. District Court Review

When resolving objections to a Report and Recommendation, the district court judge "shall make a de novo determination of those portions of the report . . . to which objection is made."[22] The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[23]

### II. Disability Determination

"The standard of review in a Social Security appeal is whether the [SSA]'s final decision is supported by substantial evidence, and whether [the agency] applied the correct legal standards."[24] "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] While the "threshold

---

16 *See* ECF No. 20.
17 *See* ECF No. 22.
18 *See* R. & R., ECF No. 25, filed Nov. 15, 2022.
19 *Id.* at 14.
20 *See* Objs. to Mag. J.
21 *See* Docket. A response to objections to a magistrate judge's order is optional. *See* Fed. R. Civ. P. 72(b)(2).
22 28 U.S.C. § 636(b)(1)(C).
23 *Id.*
24 *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . [and] the court shall review only the question of conformity with such regulations and the validity of such regulations."); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019).
25 *Grogan*, 399 F.3d at 1261.

for . . . evidentiary sufficiency is not high,"[26] "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."[27]

To determine whether the SSA met this standard, the court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."[28] An "ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."[29] The court is "mindful that [it] may neither reweigh evidence nor substitute [the court's] judgment for the [ALJ]'s."[30] "Although the evidence may . . . support[] contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views.'"[31] The claimant has the "burden to provide evidence of [the] claimant's functional limitations."[32]

## DISCUSSION

Plaintiff contends that the record supported a conclusion that he could not handle and finger bilaterally frequently.[33] He also argues that the record "did not contain an abundance of evidence as to [his] ability to . . . remain on task for 85% or more of a workday or to maintain steady attendance on a sustained basis."[34] The court discusses each argument in order.

---

[26] *Trujillo v. Comm'r*, 818 F. App'x 835, 839 (10th Cir. 2020) (unpublished) (quoting *Biestek*, 139 S. Ct. at 1154).
[27] *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).
[28] *Grogan*, 399 F.3d at 1262.
[29] *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).
[30] *Trujillo*, 818 F. App'x at 839 (citing *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight." (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007))).
[31] *Oldham*, 509 F.3d at 1257–58 (quoting *Lax*, 489 F.3d at 1084); *see Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1181–82 (10th Cir. 2020) ("We are not at liberty to second-guess the ALJ's determination.").
[32] *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004).
[33] Objs. to Mag. J. 6.
[34] *Id.* at 7.

## I. Handle and Finger Bilaterally on a Frequent Basis

Plaintiff first argues a lack of substantial evidence as to his ability to bilaterally handle and finger frequently. "In determining whether [an individual is] disabled, [the ALJ] considers all . . . symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."[35] But "[t]here must be objective medical evidence from an acceptable medical source . . . ."[36] The ALJ must "consider all the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms."[37] "[C]redibility of the claimant's subjective complaints" is also relevant.[38]

In short, Plaintiff asserts that his symptoms of tremors, rigidity, and bradykinesia contradict the ALJ's decision. Given the objective medical evidence, Plaintiff's daily activities, and Plaintiff's inconsistencies, the court finds that substantial evidence supported the ALJ's findings.

### A. Objective Medical Evidence Supported the ALJ's Findings.

The ALJ "consider[s] . . . statements about the intensity, persistence, and limiting effects of [a claimant's] symptoms."[39] However, the ALJ also "evaluate[s the] statements in relation to the objective medical evidence."[40] Here, the ALJ acknowledged that in March 2019, Plaintiff had

---

[35] 20 C.F.R. § 404.1529(a); *see id.* § 404.1520(e) ("[W]e will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record[.]").
[36] *Id.* § 404.1529(a).
[37] SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct 25, 2017).
[38] *Poppa v. Astrue*, 569 F.3d 1167, 1170–71 (10th Cir. 2009).
[39] 20 C.F.R. § 404.1529(c)(4).
[40] *Id.*

"cogwheeling rigidity in the left upper extremity, a tremor in the left hand at rest, mild to moderate bradykinesia with quick alternating movements on the left, and absent arm swing on the left."[41] The physician's assistant stated that Plaintiff had "normal motor strength, muscle bulk, and tone throughout all extremities and walked upright with a good stride."[42]

In September 2019, the physician's assistant examined Plaintiff for complaints of disability due to Parkinson's, muscle weakness, tremor, balance, and metabolic issues. The provider observed signs of Parkinson's and tremors.[43] Even so, a physical exam revealed a full range of motion for shoulders, elbows, and wrists, and "no significant findings of clinical importance" as to hands or fingers.[44] Plaintiff had full bilateral extension of his hands, he could make a fist and oppose his fingers with both hands, he had excellent upper extremity muscle strength and grip strength, and he had no decrease in muscle tone.[45] For the motor and balance exam, the physician's assistant found normal gait, walking, hopping, squatting, and getting up from a seated position.[46] Office visits in June 2019, August 2019, and December 2019 reflected similar findings.[47] Plaintiff's doctor observed the following in March 2020: "normal finger-to-nose and rapid alternating movements normal"; mild positional tremor and mild resting tremor on the left that becomes more moderate with distraction; normal bulk and tone for all extremities; and upon testing the extremities, found good strength, flexion, and grip.[48]

---

[41] CAR 28–29.
[42] *Id.* at 29 (citing *id.* at 280–81).
[43] *Id.* at 392.
[44] *Id.* at 388–89.
[45] *Id.* at 389–90.
[46] *Id.* at 392.
[47] *See id.* at 270–71, 375–76, 338.
[48] *Id.* at 408–09. Plaintiff scored a five out of five on all aspects of his motor exam. *See id.* at 409.

The ALJ also considered medical opinions and prior administrative medical findings.[49] He found them "persuasive because they are well supported and consistent . . . ."[50] In particular, he cited a November 2019 disability determination. The doctor opined that Plaintiff was capable of light work and that he could bilaterally handle and finger frequently.[51] The ALJ disagreed, however, with the doctor's conclusion as to Plaintiff's balance. Reviewing the record, the ALJ found that "reports of occasional balance disturbance . . . indicate[d] a limitation on hazards."[52] Yet he noted that on reconsideration, the state agency added a hazard restriction for balance.[53]

Overall, the objective medical evidence supported the ALJ's finding that Plaintiff could bilaterally handle and finger frequently and work as an airline security representative.[54]

**B. Plaintiff's Daily Activities Supported the ALJ's Findings.**

Daily activities are relevant to the ALJ's evaluation.[55] The ALJ noted that Plaintiff was "independent with daily activities, including his self-care, caring for a pet, light housework, preparing meals, driving, . . . going out alone, . . . reading and playing games on his phone, . . . and . . . follow[ing] a recipe."[56] Plaintiff also informed his neurologist in June 2019 that he went to Hawaii and "did not report any difficulties with travel or at the destination, other than difficulty catching a 100-pound fish due to left arm weakness and fatigue."[57] Citing state agency

---

[49] *Id.* at 29–30 (noting that he "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources").
[50] *Id.* at 30.
[51] *Id.* (citing *id.* at 72–75).
[52] *Id.*
[53] *Id.* (citing *id.* at 90).
[54] *Id.* at 30–31.
[55] *See* 20 C.F.R. § 404.1529(c)(3); *see, e.g.*, *Wilson v. Astrue*, 602 F.3d 1136, 1141–42 (10th Cir. 2010).
[56] CAR 26.
[57] *Id.* at 29.

determinations, the ALJ remarked that the Plaintiff was capable of light work, managing his own finances, and conducting "normal daily activities."[58]

The record bolstered the ALJ's findings. The initial disability claim asserted that Plaintiff "[s]pends days doing housework, going to gym, . . . [o]kay with self[-]care[,] [p]repares microwave meals, full meals once per week[,] [d]oes vacuuming and laundry[,] . . . [w]alks, drives, goes out alone, [and] shops . . . . Hobbies include phone games, reading, television, [and] boxing class."[59] In March 2019, one provider observed that Plaintiff was "[t]rying to stay more active at home with chores and [a] new puppy" and had been going to the gym.[60] Later assessments showed that Plaintiff went to the gym to box, self-groomed, bathed daily, drove occasionally, "pick[ed] up after grandkids," and did light chores.[61]

Additionally, Plaintiff's testimony supported the ALJ's findings. He said that he had stopped cutting onions, it takes him longer to prepare meals for his family, he no longer cleans bathrooms or weeds the yard, he drives less, he pole fishes instead of fly fishing, he no longer hunts or golfs, and he goes to the gym less often.[62] On the other hand, Plaintiff testified that he was able to hold, grasp, and lift things with both hands, albeit with some difficulty.[63] He said that he could stand, walk up and down stairs, and sit in a chair for up to forty-five minutes and then return to sitting after loosening up.[64] Discussing housework, he said that he washed dishes and

---

[58] *Id.* at 30.
[59] *Id.* at 84; *see id.* at 194 (self-reported activities included fishing, boxing classes, and circuit training at the gym).
[60] *Id.* at 84; *see id.* at 194.
[61] *Id.* at 84–85; *see id.* at 382.
[62] *Id.* at 192–94.
[63] *Id.* at 44.
[64] *Id.* at 47–48.

vacuumed every other day, and has a "list of things . . . to do" each day such as feeding the dog.[65] He also described a recent excursion to "dr[ive] on the roads . . . for a couple of days."[66]

The court declines to second-guess the ALJ. Substantial evidence supported the ALJ's decision to characterize Plaintiff's activities as inconsistent with a claimed inability to finger or handle bilaterally on a frequent basis.

**C. The ALJ Properly Considered Inconsistent Testimony.**

An ALJ must consider a claimant's "statements about the intensity, persistence, and limiting effects of . . . symptoms, . . . in reaching a conclusion as to whether [the claimant is] disabled."[67] But the ALJ also "consider[s] whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the] statements and the rest of the evidence."[68] An ALJ need not accept a claimant's testimony as conclusive, particularly if the claimant did not report the events to a provider or the medical evidence states otherwise.[69] "Credibility determinations are peculiarly the province of the finder of fact."[70]

The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ."[71] Plaintiff testified that due to his Parkinson's he had fallen twice "so far," gets dizzy when closing his eyes, has difficulty "walking in general," and "ha[s]

---

[65] *Id.* at 52, 55.
[66] *Id.* at 54.
[67] 20 C.F.R. § 404.1529(c)(4).
[68] *Id.*
[69] *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) ("The ALJ discredited [claimant]'s assertion that he needed a two-hour nap each day, noting his failure to report such a restriction to [his doctor]."); *cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1221–22 (10th Cir. 2004) ("[T]he ALJ's determination that [the claimant]'s allegations of disabling pain were of limited credibility is not supported by substantial evidence.").
[70] *Jones v. Colvin*, 514 F. App'x 813, 819 (10th Cir. 2013) (unpublished).
[71] CAR 28.

issues obviously with . . . gait, walking, [and] balance issues."[72] Yet Plaintiff had repeatedly "denied any falls or difficulties walking" to his medical providers.[73] It is true that in December 2019, he reported that he had "started to have a fall" and might have twisted his knee.[74] Still, the physician observed that Plaintiff walked upright with a "good stride" and encouraged him to "restart his kickboxing classes."[75] Though Plaintiff claimed that a variety of symptoms affected his abilities, the ALJ had discretion to give greater weight to the objective evidence.[76]

## II. Ability to Engage in Full-Time Competitive Work

Plaintiff next argues that there is sufficient record evidence to support a finding that he was not able to "remain on task for 85% or more of a workday or to maintain steady attendance on a sustained basis."[77] At the hearing before the ALJ, Plaintiff's counsel asked the vocational expert hypotheticals as to whether missing work two or more days each month or being off task for two to three hours each day would preclude work.[78] While the ALJ questioned Plaintiff about taking naps,[79] he did not include in his hypothetical any limitations as to work attendance or

---

[72] *Id.* at 47.
[73] *Id.* at 28–29; *see id.* at 277 ("He feels unbalanced sometimes with walking, but denies any falls."); *id.* at 293 ("[Plaintiff] . . . says his dizziness is completely gone and has no more imbalance"); *id.* at 337 ("He also says his balance is affected, but denies any falls."); *id.* at 294 ("Walks upright with good stride with absent arm swing."); *id.* at 314 ("He denies any difficulties with walking or falls."); *id.* at 326 ("He feels unbalanced sometimes with walking, but denies any falls."); *id.* at 366 ("He does not feel so much dizziness when he stands up."); *id.* at 375 (reporting that he had started boxing to help his balance and that he "has a little difficulty with balance").
[74] *Id.* at 402.
[75] *Id.* at 403.
[76] *See id.* at 28–30; *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (finding that while the record supported contrary interpretations of the claimant's deficiencies, "[t]he ALJ was entitled to resolve such evidentiary conflicts and did so"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").
[77] Objs. to Mag. J. 7–8.
[78] CAR 58–59; *see* Objs. to Mag. J. 3–6.
[79] *See* CAR 45–46.

endurance. Neither did he explicitly comment on attendance in his decision.[80] The question is whether the failure to do so is an error.

To make a disability determination, an ALJ considers a claimant's RFC. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."[81] While an ALJ must make certain findings in specific cases, SSA "regulations . . . do not require a statement that the claimant is able, with [what] the RFC assessed, to work on a regular and continuing basis."[82] "[T]hat is because within the very definition of RFC is included that ability."[83] Additionally, the "ALJ [i]s not required to accept the answer to a hypothetical question that include[s] limitations claimed by [the claimant] but not accepted by the ALJ as supported by the record."[84]

Here, the ALJ stated his responsibility to determine Plaintiff's RFC[85] and to decide whether Plaintiff had the requisite RFC to perform past work.[86] Setting forth the relevant RFC,[87] the ALJ considered whether Plaintiff's claims were supported by objective medical evidence or other evidence. The ALJ considered Plaintiff's symptoms of severe fatigue and those related to

---

[80] *See id.* at 28–30.
[81] SSR 96-8P, 1996 WL 374184, at ¶ 1 (S.S.A. July 2, 1996).
[82] *Watson v. Berryhill*, No. 16-4155, 2017 WL 5517978, at *8 (D. Kan. Nov. 17, 2017).
[83] *Id.*; *accord Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005); *Valvo v. Astrue*, No. 3:12-cv-00477, 2013 WL 1326588, at *9 (D. Or. Mar. 30, 2013) (citing *Montalvo v. Astrue*, 237 F. App'x 259, 262 (9th Cir. 2007) (unpublished)).
[84] *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021), *cert. denied sub nom. Zhu v. Kijakazi*, 142 S. Ct. 2838 (2022) (unpublished) (quoting *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995)).
[85] *See* CAR 24 ("An individual's [RFC] is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.").
[86] *Id.* at 25 (citing 20 C.F.R. § 404.1520(f)).
[87] *Id.* at 28 ("[T]he claimant has the [RFC] to perform light work . . . except he can never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, kneel, and crawl; frequently handle and finger bilaterally; and must avoid concentrated exposure to hazards.").

Parkinson's: tremors, mobility, coordination, and balance.[88] Based on the record evidence, the ALJ found that Plaintiff's RFC supported his ability to do light work as an airline security representative.[89]

The ALJ did not have to credit Plaintiff's claims or his hypotheticals. By including in the RFC Plaintiff's ability to perform light work, the ALJ implicitly spoke to Plaintiff's ability to work on a regular and continuing basis. The court will not "assume that the ALJ did not bear in mind the required definition of RFC and thereby failed his duty to consider whether, with the RFC assessed, Plaintiff [wa]s able to sustain work on a regular and continuing basis."[90]

In sum, the SSA's denial of benefits was supported by substantial evidence. The ALJ did not err in finding that Plaintiff could frequently handle and finger bilaterally, nor did he err in determining that Plaintiff could perform light work subject to certain restrictions.

**ORDER**

Accordingly, the court ADOPTS the Report and Recommendation and AFFIRMS the SSA's decision.[91] Plaintiff's Objection to the Report and Recommendation is OVERRULED.[92] The court DENIES Plaintiff's Motion for Review of Agency Action.[93]

---

[88] *Id.* (noting Plaintiff's allegations that "he has been unable to sustain any gainful employment on a regular or continuous basis").
[89] *See id.* at 63–76, 78–92, 190–97, 259–64, 271–74, 280–81, 283–85, 292–94, 337–38, 375–76, 378–94, 402–03, 406, 408–09, 413–14. By citing extensively to the record, the ALJ does not appear to have made, as Plaintiff contends, "an assumption based on another assumption." Objs. to Mag. J. 6.
[90] *Watson*, 2017 WL 5517978, at *8.
[91] ECF No. 25.
[92] ECF No. 26.
[93] ECF No. 20.

Signed January 25, 2023.

BY THE COURT

____________________________________________
David Barlow
United States District Judge